United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

J.S.[1],

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 25-cv-03062-PHK

**ORDER REMANDING CASE**

Re: Dkts. 1, 9, 10, 12, and 15

## INTRODUCTION

Plaintiff J.S. brings this action under the Social Security Act, 42 U.S.C. § 405(g) ("Act"), seeking judicial review of a final decision by the Commissioner of the Social Security Administration, ("SSA Commissioner"), denying Plaintiff's application for disability benefits. [Dkt. 1]. The Parties have consented to proceed before a Magistrate Judge for all purposes, including the entry of final judgment, under 28 U.S.C. § 636(c). *See* Dkts. 4-5. Plaintiff has filed an Opening Brief (apparently inadvertently filed twice as Dkts. 9 and 10), the Commissioner has filed a Response Brief, and Plaintiff has filed a Reply Brief. [Dkts. 9, 10, 12, 15]. The Commissioner has also filed the Administrative Record. [Dkt. 6 (hereinafter "AR")].

After carefully considering the briefing and all relevant documents, the Court **REVERSES** the Commissioner's decision and **REMANDS** the case for further proceedings consistent with this Order.

[1] In actions involving requested review of a decision by the Commissioner of the Social Security Administration, the Court generally uses the initials of the plaintiff's first and last names in the Court's public orders out of an abundance of caution and regard for the plaintiff's potential privacy concerns.

United States District Court
Northern District of California

## BACKGROUND

The following background focuses only on the factual matters and procedural history that are relevant to the Court's analysis herein.

Plaintiff filed an application for disability insurance benefits under Title II of the Act on April 8, 2023. [AR 274]. Plaintiff's claims were denied initially and on upon reconsideration. [AR 148-152, 154-157]. On March 15, 2024, Plaintiff timely submitted a Disability Appeal and requested a hearing. [AR 163]. The hearing occurred telephonically before Administrative Law Judge Davis Yee ("ALJ") on September 3, 2024. [AR 43–83].

The ALJ's November 27, 2024 written decision followed the Commissioner's five-step, sequential evaluation process for determining the merits of Plaintiff's application. [AR 14–36]. The five-step analysis requires the ALJ to consider whether the claimant: (1) has engaged in "substantial gainful activity" during the alleged period of disability; (2) has a medically determinable impairment or combination of such impairments that is "severe;" (3) has a condition that meets or equals the severity of a listed impairment; (4) has the residual functional capacity ("RFC") to return to their past relevant work; and, if not, (5) can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Wischmann v. Kijakazi*, 68 F.4th 498, 504 & n.3 (9th Cir. 2023).

At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity during the period from his alleged onset date of August 16, 2018 through December 31, 2023 (the date Plaintiff was last insured). [AR 19]. At step two, the ALJ concluded that Plaintiff has the following severe impairments: degenerative disc disease of the cervical spine with radiculopathy to both upper extremities and major depressive disorder. [AR 20]. At step three, the ALJ concluded that Plaintiff "did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." [AR 22].

Before reaching step four, the ALJ assessed the medical opinions of record, discounting some portions and admitting others, to inform the construction of Plaintiff's RFC [AR 24–34].

At step four, the ALJ found that Plaintiff had no past relevant work. [AR 34]. At step five, the ALJ relied on a vocational expert—as well as Plaintiff's age at the time of filing, past relevant

work experience, and education—to determine that "there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." [AR 35-36].

Plaintiff now argues that the ALJ's decision was not based on substantial evidence in the record and should be reversed and remanded as a matter of law. [Dkt. 10 at 26].

## STANDARD OF REVIEW

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "Overall, the standard of review is highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *Rounds v. Comm'r*, 807 F.3d 996, 1002 (9th Cir. 2015)). The Court's review in such cases is limited to determining: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner's decision comports with relevant legal standards. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) ("We will uphold the Commissioner's denial of benefits if the Commissioner applied the correct legal standards and substantial evidence supports the decision."); *accord Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022); *see generally* 42 U.S.C. § 405(g).

"Substantial evidence" is "'more than a mere scintilla' but only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Woods*, 32 F.4th at 788 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. In evaluating whether substantial evidence supports a finding, the Court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). Any conflict in the evidence is to be resolved by the ALJ, and not the Court. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) ("Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed.").

## ANALYSIS

Under the five-step, sequential evaluation process, a claimant has the burden to establish a

*prima facie* case of disability at steps one through four. *Triechler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007)); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step five, the burden shifts to the Commissioner to show that the claimant retains sufficient RFC to perform work in the national economy, given the claimant's age, education, and work experience. *Id.* A finding that a claimant is "disabled" or "not disabled" at any point in the five-step review is conclusive and terminates the analysis. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§ 423(d)(1)(A), (2)(A).

Plaintiff challenges the ALJ's decision (which became the Commissioner's final decision for purposes of judicial review) on several grounds. First, Plaintiff asserts that the ALJ failed to provide clear, convincing, and well-supported reasons for discounting Plaintiff's allegations of physical dysfunction related to his cervical degenerative disc disease. [Dkt. 10 at 3-13 (as noted, Plaintiff appears to have filed his opening brief twice at Dkts. 9 and 10; for purposes of this Order, the Court cites to the last-filed brief, Dkt. 10, which the Court treats as superseding Dkt. 9)]. Second, Plaintiff contends that the ALJ did not properly evaluate the medical opinion of consultative examiner Dr. Salvador-Moses. [Dkt. 10 at 13-18]. Third, Plaintiff argues that the ALJ erred in concluding that Plaintiff's lumbar degenerative disc disease did not meet the *de minimis* standard for establishing a severe impairment at step two of the sequential evaluation process. [Dkt. 10 at 18-26]. Plaintiff requests that the Court reverse the Commissioner's decision and remand with instructions to award benefits or, in the alternative, remand for further administrative proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g). *Id.* at 26.

In response, the Commissioner argues that (1) the ALJ reasonably rejected Plaintiff's testimony concerning his cervical degenerative disease; (2) the ALJ properly assessed and reasonably rejected the opinion of consultative examiner Dr. Salvador-Moses; and (3) Plaintiff fails to meet the burden of proving that he meets a listing for any of the severe impairments identified at step two. [Dkt. 12 at 2-11]. The Commissioner requests that this Court affirm the ALJ's decision and deny the Plaintiff's request for remand, reversal, or payment of immediate benefits. [Dkt. 12 at

12]. The Commissioner argues that if the Court finds error in the ALJ's decision, the proper remedy is to remand the case for further proceedings. *Id.* at 11–12.

The Court addresses each of Plaintiff's asserted grounds for reversal in turn.

## I. WHETHER THE ALJ PROPERLY EVALUATED PLAINTIFF'S TESTIMONY

Plaintiff first argues that the ALJ erred in discounting Plaintiff's testimony on his asserted physical dysfunction related to his cervical degenerative disc disease. [Dkt. 10 at 3-13]. The Commissioner counters that the ALJ reasonably rejected Plaintiff's "more extreme symptom complaints" by identifying specific examples of contradicting evidence in the record. [Dkt. 12 at 6].

"[S]ubstantial evidence does not support an ALJ's RFC assessment if 'the ALJ improperly rejected [the claimant's] testimony as to the severity of his pain and symptoms.'" *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2023) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). The Ninth Circuit has established a two-part analysis for evaluating the extent to which a claimant's symptoms testimony must be credited. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Ferguson*, 95 F.4th at 1199 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, [then in the second step] the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (quoting *Garrison*, 759 F.3d at 1014-15) (alteration omitted).

The "clear and convincing" standard requires the ALJ to "specifically identify" which portions of the claimant's testimony the ALJ finds "not to be credible" and "explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler*, 775 F.3d at 1102) (remaining citations omitted); *see also Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821 (9th Cir. 1995)) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."). "This is not an easy requirement to meet: 'The clear and

convincing standard is the most demanding required in Social Security cases.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014–15).

"An ALJ may consider a range of factors in assessing credibility, including '(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1287 n.7 (9th Cir. 1996)). However, the ALJ may not "reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Smartt*, 53 F.4th at 494 (quoting *Barnhart*, 400 F.3d at 681). Nor may the ALJ "justify a credibility finding 'by ignoring competent evidence in the record that suggests an opposite result.'" *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) (quoting *Gallant v. Heckler*, 763 F.2d 1450, 1456 (9th Cir. 1984)).

Here, the ALJ found that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms." [AR 25]. In the written decision, the ALJ made no finding that Plaintiff was malingering. *See* AR 14-36. Accordingly, the ALJ was required to give "specific, clear, and convincing reasons" in support of the adverse credibility finding. *See Garrison*, 759 F.3d at 1014-15. This standard "requires an ALJ to show [their] work." *Smartt*, 53 F.4th at 499. However, the standard does not require the ALJ "to perform a line-by-line exegesis of the claimant's testimony" or "to draft dissertations when denying benefits." *Lambert*, 980 F.3d at 1277.

At the hearing, Plaintiff testified that the bulging discs in his neck caused pain, muscle tightness, and problems with his bilateral upper extremities [AR 63-64]; that he was unable to keep his neck in any one position for too long [AR 50, 60]; that he could only stand for 15 minutes at a time [AR 58, 61]; and that the neck pain radiated from his neck into his arms and hands, making it difficult to hold anything [AR 62]. The ALJ concluded, however, that the record did "not show symptoms or limitations at the severity alleged by the claimant, such as the frequency, duration, and severity of episodes of shaking or dropping things alleged in the claimant's testimony, or show

symptoms or limitations from the claimant's impairments that would preclude work activity within the residual functional capacity in this decision." [AR 31].

In making a determination that Plaintiff's allegations were only "partially consistent" with the evidence of record, the ALJ considered imaging of Plaintiff's cervical spine, examinations that noted decreased cervical spine range of motion, physical examinations "often noting a normal gait, intact sensation, and no strength deficits of significance," and physical therapy records from 2019 "noting a remaining limitation primarily with postural endurance." [AR 31]. The ALJ further considered Plaintiff's reported activities, such as driving his mother around and the "occasional" frequency with which he "reach[ed] overhead with both upper extremities." [AR 31].

Although the ALJ cited medical evidence from the record to discount Plaintiff's testimony, the written decision failed to "specifically identify" which of Plaintiff's statements were inconsistent with the record or specifically why each such portion was not credible. [AR 31]; *see Lambert*, 980 F.3d at 1277-89 (citation omitted) ("providing a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible."). The only testimony the ALJ specifically identifies as inconsistent with the record is Plaintiff's allegations of "the frequency, duration, and severity of episodes of shaking or dropping things." [AR 31]. But it is not evident how the cited medical evidence—such as "physical examinations often noting a normal gait"—renders Plaintiff's testimony inconsistent with the record. [AR 31]. The written decision does not explain how evidence as to walking gait is medically relevant to Plaintiff's shaking hands and dropping things. Indeed, there is no logical link stated between the testimony and the relied-upon evidence at all. As Plaintiff notes in briefing, "Plaintiff did not allege that he has an abnormal gait because of his cervical impairment." [Dkt. 10 at 13]. In other words, "[t]he ALJ perceived an inconsistency where none exists." *Glanden v. Kijakazi,* 86 F.4th 838, 847 (9th Cir. 2023); *see also Jones v. O'Malley,* No. 23-16136, 2024 U.S. App. LEXIS 21780, at *2 (9th Cir. Aug. 28, 2024) (finding error where the ALJ "never articulated" why the medical record was inconsistent with Plaintiff's allegations of symptoms). Because the ALJ did not otherwise "identify the testimony she or he finds not to be credible and [ ] explain what evidence undermines the testimony" the ALJ erred in discounting Plaintiff's testimonial statements. *Holohan*

*v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *see also Vanya S.P. v. Bisignano,* No. 2:25-cv-04674-BFM, 2026 LX 203984, at *12 (C.D. Cal. May 5, 2026) (remanding where "the ALJ's explanation [discrediting Plaintiff's testimony] does not meet the standard set by the Ninth Circuit").

Further, the ALJ "improperly singled out a few periods of temporary well-being" to discredit Plaintiff's testimony. *Garrison,* 759 F.3d at 1018. Subjective pain is not always verifiable through a physical examination. *Glanden v. Kijakazi*, 86 F.4th 838, 847 (9th Cir. 2023). Where subsequent examinations rebut inconsistencies noted by the ALJ, the longitudinal record tends to vindicate a claimant's pain allegations. *Id*. Here, where "the record reveals a torturous path," the ALJ erred in undermining Plaintiff's allegations of symptom severity absent clear and convincing reasons to do so. *Garrison,* 759 F.3d at 1018; *see also Jones v. O'Malley*, No. 23-16136, 2024 U.S. App. LEXIS 21780, at *3 (9th Cir. Aug. 28, 2024) ("Not only is the treatment note the only documentation [to discount Plaintiff's testimony], but it is also belied by the full record, which shows that [Plaintiff] consistently presented with severe and pervasive back pain since this time."). The fact that Plaintiff "could participate in some daily activities does not contradict the evidence of otherwise severe problems that [he] encountered in [his] daily life." *See Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017); *see also Garrison*, 759 F.3d at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). And, as noted, the written decision does not identify specific testimony which is allegedly inconsistent with specific evidence as to daily activities – providing just a list of evidence as to some daily activities does not meet the requisite legal standard to reject the testimony as non-credible.

The ALJ failed to provide sufficiently "specific, clear, and convincing reasons" for discounting Plaintiff's allegations of physical dysfunction related to his cervical degenerative disc disease for his upper extremities. *Garrison*, 759 F.3d at 1014–15. Accordingly, remand is required. *See Austin v. Saul*, 818 F. App'x 725, 728 (9th Cir. 2020) ("The errors discussed above are significant enough, and sufficiently intertwined with the aspects of the ALJ's analysis that find support in the record, that we cannot conclude they were harmless.").

## II. WHETHER THE ALJ PROPERLY EVALUATED A MEDICAL SOURCE OPINION

Plaintiff was referred for a psychological assessment to further develop the record related to his mental impairments. [AR 2436-2440]. Psychological consultative examiner Dr. Salvador-Moses opined that Plaintiff was markedly limited in his ability to deal with changes in a routine work environment and in his ability to maintain persistence. [AR 2440]. As noted above, Plaintiff's second ground for review is based on the argument that the ALJ did not provide "clear and convincing reasons" to reject the marked limitations assessed by Dr. Salvador-Moses. [Dkt 10 at 17-22.]

Dr. Salvador-Moses opined that Plaintiff was moderately impaired in his ability to attend to usual work situations, moderately impaired in maintaining pace, and moderately impaired in his ability to interact appropriately with supervisors and coworkers. The Commissioner contends that the ALJ reasonably rejected the marked limitations Dr. Salvador-Moses assessed. [Dkt. 12 at 13-14].

The ALJ has a duty to evaluate all medical source opinions and "evaluate their persuasiveness" based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion," such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a)-(c); *see also Woods*, 32 F.4th at 787. "The 'most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(a)).

"Supportability" addresses how closely connected a medical opinion is to the evidence and the medical source's explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior medical finding(s) will be." *Woods*, 32 F.4th at 791–92 (quoting § 404.1520c(c)(1)) ("Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'").

"Consistency," on the other hand, compares a medical opinion to the evidence: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Woods*, 32 F.4th at 792 (quoting § 404.1520c(c)(2)) ("Consistency means the extent to which a medical opinion is 'consistent... with the evidence from other medical sources and nonmedical sources in the claim.'").

The ALJ must explain in their decision "how persuasive" they find each medical source opinion and must explicitly address how they "considered the supportability and consistency factors" in reaching those findings. *Woods*, 32 F.4th at 792; *see* 20 C.F.R. § 404.1520c(b)(2). However, the ALJ is not required to explicitly discuss any of the remaining three factors, unless there are differing medical opinions on an issue and those opinions are equally well-supported and consistent with the record. 20 C.F.R. § 404.1520c(b)(2)-(3). The ALJ's persuasiveness explanation must be supported by substantial evidence. *Woods*, 32 F.4th at 792.

Here, the written decision found the opinion of Dr. Salvador-Moses "unpersuasive" because Dr. Salvador-Moses "did not provide explanations for her opinion" and the opined limitations were "not consistent with the record as a whole." [AR 33]. The ALJ referenced inconsistencies with a marked impairment in the ability to deal with changes in a routine work environment "such as Dr. McQueen's records indicating thought blocking that improved over time" and "records from Therapy in Motion showing that the claimant reported going to California to help his mother." [AR 33].

The Court finds that the ALJ failed to properly address the supportability and consistency factors in considering the persuasiveness of Dr. Salvador-Moses's opinion. The written decision's entire evaluation of supportability consists of a single, conclusory sentence that Dr. Salvador-Moses "did not provide explanations for her opinion, such as marked impairment findings." [AR 33]. This is insufficient for purposes of explaining how and why the opinion lacked supportability. *See* 20 C.F.R. § 404.1520c(b)(2); *S.W. v. O'Malley*, No. 24-cv-00248-SVK, 2024 WL 3580825, at *6 (N.D. Cal. Jul. 30, 2024) (finding reversible error where the ALJ failed to "explicitly discuss the 'supportability' of a [medical source] opinion").

United States District Court
Northern District of California

Moreover, the written decision ignores the evidence underlying Dr. Salvador-Moses' seven-page opinion, including a review of Plaintiff's other medical records and the administration of objective tests. *See* AR 2436-2441. The ALJ "[is] not entitled to reject the responses of a treating physician without specific and legitimate reasons for doing so, even where those responses were provided on a 'check-the-box' form, were not accompanied by comments, and did not indicate to the ALJ the basis for the physician's answers. *Trevizo*, 871 F.3d at 677 n.4 (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). Accordingly, the ALJ erred by failing to adequately address the evidence underlying the supportability of Dr. Salvador-Moses' opinion when evaluating its persuasiveness.

The written decision further failed to cite substantial evidence of inconsistencies across the record to support an unpersuasiveness finding. *See Louise W. v. Comm'r of Soc. Sec.,* No. 3:22-CV-5722-DWC, 2023 U.S. Dist. LEXIS 71067, at *10 (W.D. Wash. Apr. 24, 2023) ("It is not enough for the ALJ to simply state that some evidence is inconsistent with a medical source's opinion, or that the opinion is not internally supported."). The written decision references inconsistencies with Dr. McQueen's records and notes from Therapy in Motion but does not address other, consistent findings within those very same records. *See* AR 1511-1552. The ALJ improperly engaged in selective cherry-picking of record evidence, which is not an appropriate process for evaluating alleged inconsistencies. *See Reddick v. Chater,* 157 F.3d 715, 723 (9th Cir. 1998) (finding ALJ's decision not supported by substantial evidence, where the ALJ's "paraphrasing of record material [was] not entirely accurate regarding the content or tone of the record"); *Nestor S. v. Kijakazi*, No. 3:23-cv-01845-JSC, 2023 U.S. Dist. LEXIS 205836, 2023 WL 8007106, at *2 (N.D. Cal. Nov. 16, 2023) ("The ALJ erred in cherry picking evidence supporting his mild examination findings, while ignoring the contrary evidence."). Remand is further warranted because the ALJ rejected Dr. Salvador-Moses' opinion "without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792; *see also Holohan*, 246 F.3d at 1207 (reversing ALJ's selective reliance "on some entries in [the claimant's records while ignoring] the many others that indicated continued, severe impairment").

///

United States District Court
Northern District of California

## III. WHETHER THE ALJ ERRED IN EVALUATING A SEVERE IMPAIRMENT AT STEP TWO

Finally, Plaintiff argues that the ALJ erred in concluding that Plaintiff's lumbar degenerative disease did not meet the *de minimis* standard for establishing a severe impairment at step two of the sequential evaluation process. [Dkt. 10 at 22-26].

At step two of the sequential evaluation, the Commissioner must determine "whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1520(a), 416.920(a). Plaintiff has the burden to show that (1) he has a medically determinable physical or mental impairment, and (2) the medically determinable impairment is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). The step-two inquiry is a "de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290.

An impairment is medically determinable if it results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§§§ 404.1527(a), 404.1508(a), 416.927(a), 416.908(a). An impairment or combination of impairments is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§§§ 404.1520, 404.1521(a), 416.920, 416.921(a). "Basic work activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling.'" *Smolen*, 80 F.3d at 1290 (quoting 20 C.F.R. § 404.1521(b)). An impairment or combination of impairments may be found "'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)).

In addition to evaluating the severity of an individual impairment, the ALJ must consider the combined effect of all of Plaintiff's impairments on his ability to function. *Smolen*, 80 F.3d at 1289-90; *see also Buck v. Berryhill,* 869 F.3d 1040, 1049 (9th Cir. 2017) (explaining that an ALJ must consider all limitations imposed by both severe and non-severe impairments when making the RFC assessment).

Here, the ALJ classified Plaintiff's "degenerative disc disease of the lumbar spine with radiculopathy to the lower extremities" as a non-severe impairment "because the medical and other evidence of record establishes that these were slight abnormalities or a combination of slight abnormalities that had no more than a minimal effect on the claimant's ability to perform basic work activities." [AR 20]. Plaintiff argues that his documented history of back pain and physical dysfunction stemming from his lumbar spine disorder establishes a severe impairment under the *de minimis* threshold. [Dkt. 10 at 22-26]. The Commissioner counters that most of the treatment records related to the lumbar spine "either pre-date or post-date the relevant period, or they occurred during [Plaintiff's] incarceration." [Dkt. 12 at 14].

The ALJ supports his finding of a non-severe impairment by repeatedly referencing examination notes of "normal gait" and a "normal" lumbar spine range of motion, despite otherwise acknowledging years of records describing examinations by different doctors regarding Plaintiff's lower back pain. [AR 20-21]. The written decision itself chronicles Plaintiff's repeated complaints of lower back pain, "poor thoracic lumbar posture," several rounds of imaging showing disc space narrowing, and reoccurring injections to manage the pain. [AR 20-21]. The written decision acknowledges a November 2022 radiographic imaging of Plaintiff's lumbar spine which showed "mildly narrowed L5-S1 disc height with a minimal ventral endplate degenerative osteophyte." [AR 20]. Similarly, radiographic imaging from a July 2023 emergency room visit also showed "mild L5-S1 disc space narrowing." [AR 21]. That emergency room visit was precipitated by "three days of right flank area pain." *Id.* A few days later, Plaintiff was seen by another doctor and "complained of right-sided back pain for six days].]" *Id.* A July 24, 2023 lumbar spine MRI similarly "showed overall mild multilevel degenerative changes, mild, right worse than left, neural foraminal narrowing at L4-L5[.]" [AR 21].

The medical record reveals that Plaintiff has a long history of back pain, including back surgery in 2015 "at which time he underwent Anterior Cervical Disc Replacement of C5-C6 and C6-C7." [AR 2254]. Indeed, the written decision acknowledges that the Veterans Administration rated Plaintiff as permanently and totally disabled as of January 2017, but the written decision found that determination "neither valuable nor persuasive" because the Veterans Administration has

United States District Court
Northern District of California

different rules and regulations than the Social Security Administration. [AR 34]. The record indicates that Plaintiff was diagnosed with "chronic low back pain with good range of motion and history of disc disease" and assessed as having a "decrease in physical function due to the combination of factors above." [AR 2432]. Plaintiff was further assessed as having "[s]egmental dysfunction of the cervical, thoracic, lumbar spine with associated myalgia […] complicated by L5-S1 trace left paracentral disc protrusion and annular fissure. The protruded disc narrows the left subarticular zone and contacts the descending left S1 nerve roots." [AR 2583]. A May 2024 assessment by Dr. Keeland Williams (Pain Fellow at the Palo Alto VA Medical Center) states that "[b]ased on his history, physical exam, and radiographic findings this pt [patient] appears to have both a lumbar and cervical radiculopathy both of which have positive responses to ESI. His lumbar MRI showed some mild left foraminal narrowing at L4 with mild canal narrowing at L4-L5 due to posterior disc protrusion." [AR 2706].

The written decision does not adequately explain how the ALJ found Plaintiff's lumbar impairment to be only a "slight abnormality" when considering the amount of evidence acknowledged by the ALJ and additionally found in the record. The failure to consider evidence of a diagnosis and limitations is error. *See Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (an ALJ "may not reject significant probative evidence without explanation"). Moreover, the step two threshold for finding a severe impairment is not high. *Yuckert*, 482 U.S. at 153-54.

The written decision does not explain the incongruity between the evidence of lumbar impairment explicitly addressed and acknowledged in that decision versus the ALJ's non-severe finding. On its face, the objective medical evidence appears to indicate that the ALJ improperly cherry-picked evidence to support his conclusion. *See Elizabeth B. v. Kijakazi*, 2022 U.S. Dist. LEXIS 176318, 2022 WL 4543686, at *6 (N.D. Cal. Sept. 28, 2022); *Lilita H. v. Kijakazi*, No. 21-cv-04063-JSC, 2022 U.S. Dist. LEXIS 165312, at *8 (N.D. Cal. Sep. 13, 2022). The written decision does not adequately address Plaintiff's lengthy documented record of back pain in determining the severity of his lumbar impairment. *See Smolen*, 80 F.3d at 1290. Accordingly, the ALJ erred by failing to contemplate probative evidence showing Plaintiff's lumbar degenerative disease is a medically determinable impairment which causes functional limitation.

Nevertheless, the Commissioner contends that no harmful error occurred because the ALJ considered Plaintiff's lumbar degenerative disease when assessing his functional limitations. [AR 12 at 15]. An ALJ's failure to properly consider an impairment at step two may be harmless where the ALJ considered the functional limitations caused by that impairment later in the decision. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "However, a claimant does not prove harmful error by merely asserting that certain impairments should have been identified as severe, and courts have declined to find reversible error at step two for this reason." *D.A. v. Bisignano*, No. 25-cv-00143-PHK, 2026 LX 168972, at *18 (N.D. Cal. Mar. 23, 2026) (citing *Heller v. Comm'r of Soc. Sec. Admin.*, No. CV-17-00243-TUC-DTF, 2018 U.S. Dist. LEXIS 156848, 2018 WL 4377162, at *5 (D. Ariz. Sept. 14, 2018)).

As noted above, the ALJ found Plaintiff's degenerative disc disease of the cervical spine with radiculopathy to both upper extremities to be a severe impairment. [AR 20]. Thus, the ALJ decided step two in Plaintiff's favor, at least in part. As a result, to the extent that Plaintiff argues that the ALJ erred in determining the severity of Plaintiff's impairments, any such error is harmless. *See Buck*, 869 F.3d at 1048-49 ("If step two is decided in favor of the plaintiff, the plaintiff is not prejudiced and any alleged step two error is harmless[]"); *Raquel P. v. Kijakazi*, No. 22CV2024-BEN-SBC, 2023 U.S. Dist. LEXIS 223096, 2023 WL 8656915, at *4 (S.D. Cal. Dec. 14, 2023) ("As long as the ALJ makes a finding of at least one severe impairment, a claimant is not prejudiced at the step two stage and thus any error is harmless."). Therefore, because any error by the ALJ with regard to the other asserted impairments did not legally prejudice Plaintiff, the Court finds no harmful error in the ALJ's classifications at step two.

## IV. WHETHER TO REMAND FOR AN AWARD OF BENEFITS

With regard to requested relief, Plaintiff asks the Court to remand the case for the payment of benefits, or alternatively, for further proceedings. [Dkt. 10 at 26]. When a court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th. Cir. 2004) (citations omitted).

A remand for an award of benefits is proper, however, where (1) "the ALJ has failed to

United States District Court
Northern District of California

provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;" (2) "the record has been fully developed and further administrative proceedings would serve no useful purpose;" and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th. Cir. 2017) (citation omitted). Even if all three requirements are satisfied, the Court retains flexibility to determine the appropriate remedy. *Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015).

The first factor for a remand for an award of benefits is met because the ALJ committed reversible legal error in failing to specifically identify which of Plaintiff's allegations he discounted and improperly evaluating the opinion Dr. Salvador-Moses. The second factor is not met, however, because further proceedings are necessary so that Plaintiff's uncontroverted opinion evidence and testimony may be considered in formulating an appropriate RFC and subsequent assessment of whether such a revised RFC precludes work available in the national economy. *See Treichler*, 775 F.3d at 1106. ("[A] reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony.").

The third factor for a remand for an award of benefits is not met because the ALJ is responsible for determining which of Plaintiff's statements to discount and for formulating a revised RFC that is reflective of the uncontroverted portions of Plaintiff's testimony and the medical opinions of record that were not appropriately reflected in the original RFC. *See Diedrich*, 874 F.3d at 638 ("The ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it.").

The current record does not establish whether there are any jobs in the national economy available for an individual with an uncertain RFC, and determination of this issue would require further evidence (which is appropriate for remand) such as testimony from a vocational expert. *See Treichler*, 775 F.3d at 1105 ("Where, as in this case, an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

As noted, the Commissioner argues that, if the Court finds reversible error in the ALJ's

United States District Court
Northern District of California

decision, the proper remedy is to remand the case for further proceedings. [Dkt. 12 at 11–12].

Accordingly, the Court determines that the appropriate remedy here is to remand for further Proceedings in light of this Order.

**CONCLUSION**

For all the reasons discussed herein, the Court **ORDERS** that the Commissioner's final decision is **REVERSED** and this case is **REMANDED** to the Commissioner for further administrative proceedings consistent with this Order.

This Order **RESOLVES** Dkts. 1, 9, 10, 12, and 15.

**IT IS SO ORDERED.**

Dated: September 14, 2026

PETER H. KANG
United States Magistrate Judge